**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA

v.

Case No. 5:25-cr-03254-MIS

JERRY ANTOCIO ROMERO and
JERROLD ALBERT CHAVARRIA,

Defendants.

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS INDICTMENT**

THIS MATTER is before the Court on Defendant Jerry Antocio Romero's Motion to

Dismiss Indictment ("Motion"), ECF No. 35, filed October 13, 2025, which Co-Defendant Jerrold

Albert Chavarria adopts, ECF No. 36.  The Government filed a Response on December 15, 2025,

ECF No. 45, to which Defendants jointly filed a Reply on January 26, 2026, ECF No. 49.  Upon

review of the Parties' submissions, the record, and the relevant law, the Court will **DENY** the

Motion.

**I.      Background**

The facts giving rise to this case were previously summarized by the United States Court

of Appeals for the Tenth Circuit, as follows:

> Around 2:20 in the morning, video cameras outside a Budget Inn motel in Artesia,
> New Mexico captured a red Jeep Cherokee Latitude pull into the parking lot. Mr.
> Chavarria, Mr. Romero, and a young woman exited the Jeep and rented a room.
> About two hours later, Mr. Romero escorted the now-sobbing young woman back
> into the Jeep. Mr. Chavarria followed and drove the threesome south on Highway
> 285 into rural New Mexico.
>
> Three hours later, the Jeep returned to the motel parking lot. This time, however,
> only Mr. Chavarria and Mr. Romero got out. Five hours later, the owner of an oil
> lease located eleven miles south of Artesia off Highway 285 called 911 to report
> the lifeless body of a young woman lying on the ground near a pump jack. New
> Mexico Sheriff's Office deputies subsequently identified her as the same woman
> seen in the motel video footage. An autopsy later revealed she had been shot twenty-

one times with a rifle and suffered other severe physical traumas. Near her body, officers discovered a cigarette butt with Mr. Chavarria's DNA, tire track imprints matching the Jeep, and shoe imprints consistent with those worn by Mr. Romero.

United States v. Chavarria, 140 F.4th 1257, 1259 (10th Cir. 2025).

On February 22, 2023, a Grand Jury sitting in the District of New Mexico returned a superseding indictment charging Chavarria and Romero with kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1), in a case assigned to now-Chief Judge Kenneth J. Gonzales. United States v. Chavarria, Case No. 2:22-cr-01724-KG ("Chavarria I"), ECF No. 33. As relevant here, the superseding indictment charged that "in committing and in furtherance of the commission of the offense," Defendants "used a motor vehicle, a means, facility, and instrumentality of interstate commerce[.]" Id.

Romero filed (and Chavarria adopted) a motion to dismiss the superseding indictment in Chavarria I, arguing that it failed to sufficiently allege an instrumentality of interstate commerce. Chavarria I, ECF Nos. 37, 38. The district court granted the motion to dismiss, Chavarria I, ECF No. 50, and the Government appealed, Chavarria I, ECF No. 58. On June 16, 2025, the Tenth Circuit affirmed the district court's dismissal of the superseding indictment in Chavarria I, holding that "'motor vehicles'—an undefined, generic term—are not per se instrumentalities of interstate commerce for purposes of the federal kidnapping statute[,]" and concluding that "the government's threadbare, conclusory indictment is fatally deficient." Chavarria, 140 F.4th at 1268.

On August 20, 2025, a Grand Jury sitting in the District of New Mexico returned a new Indictment charging Chavarria and Romero with kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1), initiating the instant case. ECF No. 3. This time, the Indictment charges that "in committing and in furtherance of the commission of the offense," Defendants "used means, facilities, and instrumentalities of interstate commerce, to wit: an automobile, specifically a Jeep

Cherokee manufactured in Toledo, Ohio; a United States highway, specifically U.S. Route 285; and a hotel or motel servicing interstate travelers, specifically the Budget Inn, Artesia, New Mexico." Id. at 1.

On October 13, 2025, Romero filed (and Chavarria adopted) the instant Motion to Dismiss the Indictment. ECF Nos. 35, 36. The Government filed a Response, ECF No. 45, to which Defendants jointly filed a Reply, ECF No. 49.

Although Romero does not identify the legal mechanism underpinning his Motion, the Court construes it as motion to dismiss for failure to state an offense under Federal Rule of Criminal Procedure 12(b)(3)(B)(v).[1]

## II.    Legal Standard

In general, an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). "An indictment need only meet minimal constitutional standards, and [the Court] determine[s] the sufficiency of an indictment by practical rather than technical considerations." United States v. Dashney, 117 F.3d 1197, 1205 (10th Cir. 1997). "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." Id.

---

[1]    See United States v. Clements, Case No. 5:23-cr-01389-MIS, 2024 WL 130964, at *1 & n.1 (D.N.M. Jan. 11, 2024) (construing motion to dismiss federal kidnapping charge as a motion to dismiss for failure to state an offense where the defendant argued that the indictment failed to allege a sufficient nexus to interstate commerce); see also United States v. Sinks, 473 F.3d 1315, 1320 (10th Cir. 2007) (observing that a challenge to the sufficiency of an indictment to allege a nexus to interstate commerce is a challenge to the sufficiency of the indictment to state an offense, not a challenge to the Court's jurisdiction); cf. United States v. Prentiss, 256 F.3d 971, 982 (10th Cir. 2001) ("[T]he Government's failure to allege the [jurisdictional element] in the indictment did not deprive the district court of subject matter jurisdiction to hear the case, although Defendant ultimately may be entitled to dismissal of the indictment."), overruled in part on other grounds by United States v. Cotton, 535 U.S. 625 (2002).

Notwithstanding the "minimal constitutional standards" required to render an indictment sufficient, id., a defendant may file a pretrial motion alleging "a defect in the indictment . . . including: failure to state an offense[.]" Fed. R. Crim. P. 12(b)(3)(B)(v). Rule 12(b) "permits pretrial resolution of a motion to dismiss the indictment only when 'trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.'" United States v. Pope, 613 F.3d 1255, 1259 (10th Cir. 2010) (quoting United States v. Covington, 395 U.S. 57, 60 (1969)). "If contested facts surrounding the commission of the offense would be of any assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." Id. However,

> courts may entertain even motions to dismiss that require resort to facts outside the indictment and bearing on the general issue in the "limited circumstances" where "[1] the operative facts are undisputed and [2] the government fails to object to the district court's consideration of those undisputed facts," and [3] the district court can determine from them that, "as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."

Id. at 1260 (quoting United States v. Hall, 20 F.3d 1084, 1088 (10th Cir. 1994)); see also United States v. Todd, 446 F.3d 1062, 1068 (10th Cir. 2006).

## III.    Discussion

The federal kidnapping statute prohibits unlawfully seizing, confining, inveigling, decoying, kidnapping, abducting, or carrying away a person when

> [1] the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or [2] the offender travels in interstate or foreign commerce or [3] [the offender] uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense[.]

18 U.S.C. § 1201(a)(1) (emphasis added). Here, the Indictment charges that Defendants violated this statute by unlawfully seizing, confining, kidnapping, abducting, and carrying away "Jane Doe"

using "an automobile, specifically a Jeep Cherokee manufactured in Toledo, Ohio; a United States highway, specifically U.S. Route 285; and a hotel or motel servicing interstate travelers, specifically the Budget Inn, Artesia, New Mexico." ECF No. 3 at 1.

Romero argues that "the use of a motor vehicle manufactured in Ohio; the use of a U.S. highway and the use of a motel that may have served interstate travelers [] to effect the transport in" a wholly intrastate kidnapping is insufficient to establish the interstate commerce element of 18 U.S.C. § 1201(a)(1). Mot. at 12. He argues that "the Commerce Clause can be used to regulate the instrumentalities of intrastate commerce – but only after congressional hearings that determine that the activity in question has a substantial effect on interstate commerce[,]" and "**there are no congressional findings** that the use of a vehicle . . . manufactured in a different state or the use of a U.S. highway or the use of a hotel used by interstate travelers to commit a crime individually or lumped together brings the matter under ambit of the Commerce Clause." Id.[2]

The Government argues that the Indictment is sufficient because it alleges the use of an "automobile" and "[a]utomobiles are per se instrumentalities of interstate commerce." Resp. at 7; see also id. at 7-10 (citing United States v. Bryan, 159 F.4th 1274, 1295 (11th Cir. 2025); United States v. Windham, 53 F.4th 1006, 1013 (6th Cir. 2022); United States v. Protho, 41 F.4th 812, 828 (7th Cir. 2022); United States v. Cobb, 144 F.3d 319, 322 (4th Cir. 1998); United States v. Gonzales, No. 21-10631, 2022 WL 1421032, at *1 (5th Cir. May 5, 2022); United States v.

---

[2]       Romero also appears to argue that the victim must cross state lines for a kidnapping offense to satisfy the intestate commerce element. See id. at 15-16 (citing 18 U.S.C. § 1201(b); Tenth Cir. Pattern Jury Instructions (Crim.) § 2.55 (2025)). The Court summarily rejects this argument as inconsistent with the plain language of the federal kidnapping statute. Although transporting the victim across state lines is one means of satisfying the statute, "[a] 2006 amendment expanded the crime to include intrastate activity when an 'offender . . . uses . . . any . . . instrumentality of interstate . . . commerce in committing or in furtherance of the offense.'" United States v. Morgan, 748 F.3d 1024, 1031 (10th Cir. 2014) (quoting Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109–248, 120 Stat. 616 (codified at 18 U.S.C. § 1201(a)(1))).

Bachicha, Case No. 1:19-cr-02328-MLG, 2025 WL 2898382, at *6 (D.N.M. Oct. 10, 2025)).  It further argues that whether an object is an instrumentality of interstate commerce is a question of law to be decided by the court and does not turn on whether there were congressional hearings and findings on the issue.  Id. at 10-11.  It further argues that the Indictment is sufficient because it alleges the use of a United States highway and "[t]he Supreme Court has made clear that airplanes, railroads, highways and bridges constitute instrumentalities of interstate commerce which Congress can regulate under the Commerce Clause."  Id. at 12-13 (quoting United States v. Bishop, 66 F.3d 569, 588 (3d Cir. 1995), as amended (Sep. 29, 1995)).  Finally, the Government argues that the Indictment is sufficient because it alleges the use of "a hotel or motel servicing interstate travelers," id. at 3, 10, and "[h]otels serving interstate travelers are essential facilities, channels or instrumentalities because they are necessary to allow for the flow of travelers from one state to another.  Without hotels, interstate travel doesn't happen."  Id. at 13-14.  And it notes that, in fact, in Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 256 (1964), the Supreme Court "upheld Congress's Commerce Clause authority to regulate a 'motel which concededly serves interstate travelers.'"  Id. at 14 (quoting Heart of Atlanta Motel, 379 U.S. at 261).

In their Reply, Defendants maintain that the Indictment is deficient because it "alleges no interstate travel, no commercial transaction, and no economic activity[,]" and the Tenth Circuit emphasized in Chavarria that "an object is an instrumentality of interstate commerce only insofar as it serves the end of interstate commerce itself, not merely because it belongs to a broad class of movable things."  ECF No. 49 at 2.  They further argue that intrastate use of a motel and incidental intrastate use of a federal highway are insufficient to confer federal jurisdiction without some showing that the use impacted interstate commerce.  Id. at 4.  They argue that the Government's failure "to articulate any meaningful limit on federal authority" is fatal to each of their theories of

6

Commerce Clause jurisdiction because "the Constitution does not permit the federal government to exercise a general police power over violent crime through creative re-description of local conduct." Id. at 5.

Pursuant to the Constitution's Commerce Clause, "Congress shall have Power . . . [t]o regulate Commerce with foreign Nations, and among the several states, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. The Supreme Court has "identified three broad categories of activity that Congress may regulate under its commerce power." United States v. Lopez, 514 U.S. 549, 558 (1995). "First, Congress may regulate the use of the channels of interstate commerce." Id. "Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." Id. Third, "Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce[.]" Id. at 558-59 (citations omitted). "Congress's reference to the 'instrumentalities of interstate commerce' in the federal kidnapping statute invokes federal jurisdiction under" the second Lopez category. Chavarria, 140 F.4th at 1262.

Initially, the Court rejects Defendants' argument that there must be congressional findings that an activity has a substantial effect on interstate commerce before Congress may regulate it. As previously stated, "Congress is empowered to regulate and protect the instrumentalities of interstate commerce[,]" Lopez, 514 U.S. at 558, and whether something is an instrumentality of interstate commerce is a question of law for the court to decide, Morgan, 748 F.3d at 1034.

In the Tenth Circuit, "[t]he 'instrumentalities' are the means of interstate commerce, such as ships and railroads[.]" United States v. Patton, 451 F.3d 615, 621 (10th Cir. 2006). In Chavarria, the Tenth Circuit narrowly held that "that 'motor vehicles'—an undefined, generic term—are not

per se instrumentalities of interstate commerce for purposes of the federal kidnapping statute." 140 F.4th at 1268. In doing so, it explicitly did <u>not</u> decide whether "automobiles" are per se instrumentalities of interstate commerce for purposes of the federal kidnapping statute, <u>id.</u> at 1264 n.14; indeed, it distinguished "motor vehicles" from "automobiles," observing that "[t]he terms are not coextensive" and that "'automobile' is considerably narrower than 'motor vehicle,'" <u>id.</u>

It appears that every federal court of appeals to have addressed the issue has held that automobiles <u>are</u> per se instrumentalities of interstate commerce for purposes of 18 U.S.C. § 1201(a)(1). <u>Bryan</u>, 159 F.4th at 1295 (holding that "automobiles, like [the defendant's] truck, are <u>per se</u> instrumentalities of interstate commerce" for purposes of the federal kidnapping statute); <u>Windham</u>, 53 F.4th at 1011 (holding that "intrastate use of a cell phone and automobile satisfies § 1201(a)(1)'s interstate commerce requirements"); <u>Protho</u>, 41 F.4th at 829 (holding that use of an automobile satisfies the interstate commerce element of the federal kidnapping statute); <u>Gonzales</u>, 2022 WL 1421032, at *1 ("[W]e have recognized that the interstate nexus requirement for federal crimes is satisfied by, as pertinent here, the wholly intrastate use of an automobile."). However, in <u>Chavarria</u> the Tenth Circuit stated in <u>dicta</u> that the "perfunctory rationales" of <u>Windham</u> and <u>Protho</u> "are not persuasive." 140 F.4th at 1267.[3]

The Court finds that it is constrained by the reasoning of <u>Chavarria</u> to conclude that the use of an automobile in committing or in furtherance of a kidnapping—divorced from any commercial purpose—is insufficient to satisfy the interstate commerce element of the 18 U.S.C. § 1201(a)(1). <u>Chavarria</u> explains that "an 'instrumentality <u>of interstate commerce</u>' must actually serve the 'end' of interstate commerce. 'Commerce" is the wellspring from which Congress's constitutional

---

[3]     The Eleventh Circuit decided <u>Bryan</u> after the Tenth Circuit decided <u>Chavarria</u>.

authority arises—not something's status as an instrumentality." 140 F.4th at 1264. See also id. at 1267 ("We follow Gibbons, where Chief Justice Marshall chastened that individual objects are 'instruments' of commerce 'only in so far' as they bear a connection 'with the commerce which Congress has power to regulate.'" (quoting Gibbons v. Ogden, 22 U.S. 1, 95 (1824)). The court concluded that "[t]o be an 'instrumentality of interstate commerce,' subject to Congress's Category 2 authority, an object must be more than just a means to an end. It must be a means to the end of commerce." Id. at 1268. Here, the Indictment does not charge that Defendants' use of an automobile during Jane Doe's kidnapping involved any commercial purpose. Consequently, the automobile does not satisfy the interstate commerce element of Section 1201(a)(1) in this case.

However, the Court finds that interstate highways are per se instrumentalities of interstate commerce because, as a class, they serve the "end" of interstate commerce. See Overstreet v. North Shore Corp., 318 U.S. 125, 129-30 (1943) ("Vehicular roads and bridges are as indispensable to the interstate movement of persons and goods as railroad tracks and bridges are to interstate transportation by rail. If they are used by persons and goods passing between the various States, they are instrumentalities of interstate commerce."); see also Alstate Constr. Co v. Durkin, 345 U.S. 13, 16 (1953) ("In Overstreet we pointed out that interstate roads and railroads are indispensable 'instrumentalities' in the carriage of persons and goods that move in interstate commerce."). Because the Indictment charges Defendants with using "a United States highway, specifically U.S. Route 285" in committing and in furtherance of the commission of their offense, and because the Court finds that interstate highways are per se instrumentalities of interstate commerce,[4] the Indictment sufficiently alleges the use of an instrumentality of interstate

---

[4] Route 285 is a United States highway that traverses Texas, New Mexico, and Colorado. See U.S. Route 285, Wikipedia, available at https://perma.cc/H8UL-SYVF.

9

commerce.  See United States v. Kelly, 609 F. Supp. 3d 85, 146 (E.D.N.Y. 2022) (finding that a reasonable juror could conclude that the defendant used a facility of interstate commerce in connection with his racketeering offense under 18 U.S.C. § 2422(b) because the evidence showed that "when the defendant enticed Jane to travel from New York to California in October of 2015, she used interstate highways, including I-80, which courts recognize as a facility of interstate commerce"); Ninth Cir. Manual of Model Civ. Jury Instr., Instr. 18.1 ("An instrumentality of interstate commerce includes the postal mails, e-mails, telephone, telegraph, telefax, interstate highway system, internet and similar methods of communication, and travel from one state to another within the United States."); cf. United States v. Daley, 564 F.2d 645, 649 (2d Cir. 1977) ("[E]xtortion directed at those constructing part of an interstate highway, which is an instrumentality of interstate commerce, falls within the jurisdictional scope of the Hobbs Act."); McComb v. Johnson, 174 F.2d 833, 834 (8th Cir. 1949) (describing "highways and roads" as "instrumentalities of interstate commerce").

Because the Court finds that Defendants' use of an interstate highway in the commission of and in furtherance of the kidnapping satisfies 18 U.S.C. § 1201(a)(1)'s jurisdictional element, the Court need not decide whether their use of a motel satisfies the statute's jurisdictional element.

## IV.     Conclusion

Therefore, it is **HEREBY ORDERED** that Defendants' Motion to Dismiss Indictment, ECF No. 35, is **DENIED**.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

10